UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-24105-CIV-MORENO

ELIAS BAQUERO,

    Plaintiff,

vs.

LANCET INDEMNITY RISK RETENTION GROUP, INC. and LEXINGTON INSURANCE COMPANY,

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S AND DEFENDANT LANCET INDEMNITY RISK RETENTION GROUP, INC.'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff Elias Baquero and Defendant Lancet Indemnity Group's Cross-Motions for Summary Judgment (**D.E. Nos. 24 & 27**), filed on **May 30, 2013**.

THE COURT has considered the motions, replies, responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the Plaintiff's Motion for Summary Judgment is DENIED. Defendant Lancet Indemnity Group's Motion for Summary Judgment is DENIED.

## I. Factual Background

This case stems from a medical malpractice action. On October 12, 2009, Freya Baquero died after receiving medical treatment. Freya Baquero had arrived at South Florida Urgent Care ("RiteCare") on October 4, 2009 with complaints of respiratory distress and fever, and she was examined by Dr. Frank Don. Dr. Don treated her, but discharged her that day. On October 11, 2009

Freya Baquero was admitted to Kendall Regional Hospital with severe pneumonia, septic shock, and respiratory shutdown. She died the next day.

Elias Baquero, the Plaintiff in this case, filed suit in Florida Circuit Court as Personal Representative of Freya Baquero's estate against Dr. Don and RiteCare. That case was settled, and, as part of the settlement, Baquero received all rights RiteCare and Dr. Don may have against their insurers. RiteCare had insurance Policies with Defendants Lexington Insurance Company ("Lexington") and Lancet Indemnity Risk Retention Group, Inc. ("Lancet"). Lexington and Baquero filed a Notice of Pending Settlement **(D.E. No. 49)** on **July 9, 2013**, with the Court, and so this memorandum concerns only Lancet and Baquero's cross-motions for summary judgment.

RiteCare had two insurance policies with Lancet. Policy #LI090909000191 ("Policy 191") covered all occurrences from October 31, 2009 through November 1, 2010. The policy was signed by J. Dennis Watts ("Watts")on behalf of Lancet on November 4, 2009. Policy #LI090907000301 ("Policy 301") is a claims-made tail policy that covers all claims made between December 21, 2009 and December 21, 2010, and it is the policy at issue in Lancet's motion for summary judgment. Watts signed the policy on behalf of Lancet on January 8, 2010. Dr. Don was a named insured under the policy.

Paragraph 11 of Policy 301 provides that "[i]n issuing this Policy, we relied upon the statements and representations in the Application. The Insureds warrant that all such statements and representations are true and deemed material to the acceptance of the risk or the hazard assumed by us under this policy." It further provides that "[t]he Insureds agree that in the event any such statements or representations are untrue, this Policy will not afford any coverage with respect to any Insured who knew the facts that were not truthfully disclosed in the Application, whether or not such

Insured knew that the Application contained an untruthful disclosure." The policy defines the term Application as "all applications, including attachments and submitted materials, for this Policy or for any policy of which this Policy is a renewal or replacement. All such applications, attachments and materials are deemed attached to and incorporated into this Policy. You warrant that all such information is true, complete and accurate."

Dr. Hossein Joukar, RiteCare's principle, filled out the application for the Lancet Policy on September 26, 2009, and it was transmitted to Watts via email for processing on October 5, 2009. On November 20, 2009, Baquero's attorney, Vidian Mallard, sent a letter to RiteCare's Records Custodian requesting "ITEMIZED HOSPITAL BILL(S) and any and all HOSPITAL RECORDS for any and all admissions to your facility..." The letter further provided that, "Mr. Baquero has retained this office to investigate a medical malpractice action against you and/or corporate entity arising out of the medical care you provided to [Freya Baquero]. Attorney Mallard also sent a letter on November 20, 2009 to the Administrator of RiteCare, seeking information regarding insurance coverage pursuant to Florida Statute § 627.4137. The letter likewise was clear that the request was related to Freya Baquero. Both letters were sent certified mail. At the time, Dr. Joukar was RiteCare's administrator and records custodian, and he also served as the company's owner, manager, registered agent, president, and CEO.

RiteCare did not respond to either of the letters requesting documents. On December 15, 2009, Attorney Mallard sent another letter to the Records Custodian. The letter reiterated the initial request for records, threatened sanctions if the letter was not complied with, and requested that all original records be preserved.

Dr. Joukar signed the Statement of No Known Claims/Losses on December 29, 2009. The

Statement provided in relevant part that

> 1. I have no known losses or claims that have not been reported to my prior insurance carrier.
> 2. I have no knowledge or information relating to a MEDICAL INCIDENT which could reasonably result in a claim, that has NOT been reported to a prior insurance carrier.
> 3. I have no knowledge of ANY REQUEST FOR MEDICAL RECORDS which might result in a claim.

On January 12, 2010, Attorney Mallard and Attorney Robert J. Bryan, Esq. sent a Notice of Intent to Initiate Litigation for Medical Malpractice pursuant to Florida Statute § 766.106. Baquero filed the underlying state court claim on June 2, 2010. RiteCare's attorney, Joseph Lowe, Esq., notified Lancet of the claim on July 8, 2010.

Lancet denied coverage for the claim in a letter received July 15, 2010. Regarding Policy 301, Lancet's reasons for denying the claim were that

> it is our understanding that the facts underlying the lawsuit identified above were known to the policy-insured's, and no such notice was conveyed to Lancet by the insured's. Furthermore, it is our understanding that the insured's properly received the pre-suit notice of the potential claim from the representatives of the Baquero estate, pursuant to Florida Statute 766.106, as alleged at paragraph 14 of the Complaint. The insured's failed to properly notify Lancet and failed to participate in the pre-suit process. An express condition of the policy is full and complete disclosure of known, potential claims, prompt notice of claims and full and complete cooperate with litigation demands. The insured's failed to meet these policy requirements.

Plaintiff maintains that Dr. Joukar did not see the November 20 and December 15 letters prior to signing the statement of no known claims on December 29, 2009. Dr. Joukar repeatedly stated in his deposition that he had no knowledge of the letters, and he has testified that he does not recognize the handwriting of the person who signed for the November 20 letters.

Plaintiff and Defendant Lancet filed cross-motions for summary judgment on **May 30, 2013**.

Defendant Lancet contends that, because Dr. Joukar had knowledge of the underlying claims at the time he executed the statement of no known claims, his material misrepresentations activated multiple policy provisions that precluded coverage of Baquero's claim. Plaintiff argues that he is entitled to summary judgment because the November 20 and December 15 letters did not constitute claims and because Dr. Joukar did not have knowledge of the letters. Each party's arguments as to why they deserve summary judgment are substantially similar to their arguments as to why summary judgment in favor of the opposing party is inappropriate.

## II. Analysis

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

Under Florida Law, an insurance policy's scope is defined by the policy's language. "It is well settled that the construction of an insurance policy is a question of law for the court." *Jones v. Utica Mut. Ins. Co.*, 463 So.2d 1153, 1157 (Fla. 2006). "However, it is for the jury to determine whether the facts of the case fall within the scope of coverage as defined by the court." *Id.* Similarly, "[a]ctual or constructive knowledge is a factual question." *LanChile Airlines v. Conn. Gen. Life Ins.*

*Co. of N. Am.*, 759 F.Supp. 811, 814 (S.D. Fla. 1991) (Moreno, J.).

### A. The November 20 and December 15 letters

Plaintiff argues that it had no duty to report the letters to Lancet because the letters did not constitute "claims." Plaintiff cites numerous cases for the proposition that requests for medical records are not claims. *See Nat'l Fire Ins. Co. v. Bartolazo*, 27 F.3d 518 (11th Cir. 1994); *Aguilar v. Royal Surplus Lines Ins. Co.*, 2006 WL 2038643 (Bankr. S.D. Fla. June 5, 2006); *Myers v. Interstate Fire & Cas. Co.*, 2008 WL 276055 (M.D. Fla. Jan. 30, 2008).

In *Bartolazo*, the insured doctor received a letter from the Plaintiff's attorney that read:

> Our office, in association with the office of James H. Turner, represents Helen Marsico in her claim for medical malpractice and other relief against you.
> You are requested to furnish to us copies of all your medical records pertaining to Helen Marsico within 10 business days of the date of this letter. Authorization for the release of medical information signed by Ms. Marsico is enclosed.
> We will reimburse you for reasonable copy charges for copies of your records.

*Id.* The 11th Circuit held that, under Florida law and under the terms of the contract, the letter did not constitute a claim. The insurance company had an exclusion which permitted it to "deny coverage on any claim arising out of a medical incident which, on the inception date of the policy, the insured 'knew or had been told ... would result in a claim' or is the subject of a pending claim.'" *Id.* The insurance company argued that "Bartolazo's knowledge of Marsico's claim at the inception of the policy excluded the claim pursuant to Exclusion Q." *Id.* at 520. The 11th Circuit held that the letter did not constitute a claim, and affirmed the District Court's denial of summary judgment on that argument. *Id.* at 519.

Plaintiff is correct that the Nov. 20 and Dec. 15 letters are not "claims." *See National Fire Ins. Co. v. Bartolazo*, 27 F.3d at 519. Nevertheless, this does not end the factual analysis. The Nov.

20 letter addressed to the Records Custodian requested "ITEMIZED HOSPITAL BILL(S) and any and all HOSPITAL RECORDS for any and all admissions to your facility..." Defendant has argued that the letters constituted a "request for medical records which might result in a claim" required to be disclosed pursuant to the Statement of No Known Claims and thus, by failing to disclose them, RiteCare's subsequent claim was not covered. This is a factual question, and one that is for the jury to decide. *See Jones v. Utica Mut. Ins. Co.*, 463 So.2d at 1157. Thus it would be improper to decide this issue on summary judgment.

### B. Whether Dr. Joukar had Knowledge of the Request for Medical Records at the Time he Executed the Statement of No Known Facts is a Material Question of Fact

Defendant Lancet, in its Motion for summary judgment, argues that by virtue of the November 20 and December 15, 2009 letters, RiteCare had knowledge of the requests for medical records that could produce a claim and knowledge of a medical incident that could lead to a claim. "Actual or constructive knowledge is a factual question." *LanChile Airlines v. Conn. Gen. Life Ins. Co. of N. Am.*, 759 F.Supp. 811, 814 (S.D. Fla. 1991) (Moreno, J.). Similarly, "[t]he general rule is that whatever knowledge an agent acquires within the scope of his authority is imputed to his principal." *Id.* Additionally, "the act of an employee or agent of a corporation is the act of the corporation itself." *Discovery Prop. & Cas. Ins. Co. v. Lexington Ins. Co.*, 664 F.Supp.2d 1296, 1301 (S.D. Fla. 2009) (Ryskamp, J.).

Under Florida Law, "an insurer is entitled, as a matter of law, to rely upon the accuracy of the information contained in the application and has no duty to make additional inquiry." *Indep. Fire Ins. Co. v. Arvidson*, 604 So.2d 854, 856 (Fla. Dist. Ct. App. 1992). "[A]ny misrepresentations shall not prevent a recovery under the policy unless they are material either to the acceptance of the risk

or the hazard assumed by the insurer." *Id.* Additionally, there is a rebuttable presumption that a letter properly mailed was received by the addressee. *Barnett v. Okeechobee Hospital*, 283 F.3d 1232, 1239 (11th Cir. 2002); *Berwick v. Prudential Prop. & Cas. Ins. Co.* 436 So.2d 239, 240 (Fla. Dist. Ct. App. 1983).

Defendant has presented evidence that the letters were mailed and properly addressed to RiteCare. Plaintiff has provided evidence that Dr. Joukar did not have knowledge of the request for medical records or knowledge of the medical incident that could give rise to a claim at the time he signed the Statement of No Known Claims. Plaintiff has presented evidence that Dr. Joukar did not know who at RiteCare received the letters and that the letters did not make it to him by December 29, 2009, when he signed the Statement of No Known Claims. Keeping in mind the rebuttable presumption that a letter properly mailed was received by the addressee, the Court notes that the letters were mailed to Ritecare and addressed to "Administrator" and "Records Custodian," respectively - positions that Dr. Joukar held - but the letters were not addressed to Dr. Joukar personally. Plaintiff has presented enough evidence to create a genuine issue of material fact as to the state of Dr. Joukar's knowledge on December 29, 2009, when he executed the Statement of No Known Claims. Actual or constructive knowledge is ordinarily a factual question, and the Court is not persuaded to make this case the exception and grant summary judgment at this time. *See LanChile Airlines v. Conn. Gen. Life Ins. Co. of N. Am.*, 759 F.Supp. at 814.

### C. Plaintiff did make a *prima facie* case for coverage

In addition to its claims discussed above, Defendant argues that plaintiff must establish a prima facie case that his claim falls within the terms of the contract before the Defendant must provide evidence against. It cites *Kimbro v. Metro Life Ins. Co.*, 112, So.2d 274 (Fla. Dist. Ct. App.

1959) for the proposition that Plaintiff has not satisfied its *prima facie* burden. *Kimbro* is distinguishable from the case at bar. That case concerned improper jury instructions that required the plaintiff to affirmatively negate all possibilities for the injuries caused except those that would be covered by insurance. In ruling that this jury instruction was improper, the Court determined that a party to a contract may not alter the rules of evidence. This ruling, while a correct statement of law, has no effect on the case at bar. Further, *Kimbro* provides no support for Defendant Lancet's implicit argument that Plaintiff has not met his burden of proof to establish a *prima facie* case of coverage. Plaintiff, as RiteCare's assignee, has shown that RiteCare had a valid policy issued by Lancet for claims that occurred between December 21, 2009 and December 21, 2010. Plaintiff has argued that a claim did not arise until January 12, 2010. Thus, this Court finds that Plaintiff has met its *prima facie* burden.

## D. The "Mend the Hold" Doctrine is not Applicable to this Case

Plaintiff argues that Defendant is changing its basis for denying coverage and that it should be estopped from doing so under the "Mend the Hold" doctrine. Plaintiff cites the Supreme Court's 1877 decision in *Ohio & M.R. Co. v. McCarthy*, 96. U.S. 258 (1877) for this proposition. The "Mend the Hold" Doctrine is based on the principles of waiver and estoppel. *See id.* at 267-68. The basic tenet of the doctrine is that a party to a contract cannot change its defenses to performance of the contract in the middle of the litigation. *See Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362-65 (7th Cir. 1990). In the case at bar, the "Mend the Hold" doctrine is most properly used as "a substantive doctrine especially applicable to insurance companies that change their reason for refusing to pay a claim." *Id.* at 363.

Plaintiff's "Mend the Hold" arguments are unsuccessful for two reasons: one based in law

-9-

and the other based in fact. In the insurance context, "[i]t is well settled in Florida that the doctrines of waiver and estoppel are not applicable to matters of *coverage* as distinguished from grounds of *forfeiture*." *Starlite Svcs., Inc. v. Prudential Ins. Co. of Am.*, 418 So.2d 305, 306-07 (Fla. Dist. Ct. App. 1982). Florida courts provide an exception where "the circumstances indicate that the insurer's conduct induced the insured to rely on that conduct to his detriment." *American States Ins. Co. v. McGuire*, 510 So.2d 1227, 1229 (Fla. Dist. Ct. App. 1229). Courts in this District have found that "Mend the Hold" will operate to bar a new defense only where the insurer had "sufficient information at the time of the initial denial of coverage to have waived the additional defenses presented." *Trans Ocean Container Corp. v. Yorkshire Ins.Co. Ltd. "C" Account*, 81 F.Supp.2d 1340, 1347 (S.D. Fla. 1999) (Moore, J.).[1] This case involves coverage, and Plaintiff has provided no evidence that insurer's conduct induced the insured's actions.

Factually, and more to the point, Defendant Lancet has not actually changed its position. Defendant Lancet's denial of coverage letter stated in relevant part that

> it is our understanding that the facts underlying the lawsuit identified above were known to the policy-insured's, and no such notice was conveyed to Lancet by the insured's. . . . An express condition of the policy is full and complete disclosure of known, potential claims, prompt notice of claims and full and complete cooperation with litigation demands. The insured's failed to meet these policy requirements.

It is true that Defendant Lancet did not specifically cite paragraph 11 of the policy for its denial of coverage. Nevertheless, its assertion "that the facts underlying the lawsuit identified above were known to the policy-insured's" is entirely consistent with the defense that RiteCare had

---

[1] While the *Yorkshire* decision does not use the term "Mend the Hold", it is regarded as a decision using the doctrine. *See Principal Life Ins. Co. v. Alvarez*, 2011 WL 4102327 at *6 (S.D. Fla. Sept. 14, 2011) (Altonaga, J.); Vincent Laurato, Sr., *Mending the Hold in Florida: Getting a Better Grip on an Old Insurance Doctrine*, 4 Fla. A & M U. L. Rev. 73 (2008).

knowledge of the request for medical records at the time that Dr. Joukar filled out the statement of no known claims that Defendant Lancet has advanced throughout litigation. Requiring insurers to adhere to the exacting early precision and continued lingual consistency in their denials of coverage letters and subsequent litigation proceedings as Plaintiff would like this Court to do would extend the already shaky "Mend the Hold" doctrine far beyond its limits, and the Court declines to do this.

### E. Conclusion

For the above reasons, it is inappropriate to grant summary judgment on behalf of either party at this time. There at two primary issues of material fact that must be determined: (1) whether Dr. Joukar had knoweldge of the Nov. 20 and Dec. 15 letters at the time he executed the Statement of No Known Claims, and (2) Whether the letters constituted a "Request for Medical Records which might result in a claim." A trial must be conducted to determine these issues. Thus Defendant Lancet's Motion for Summary Judgment is DENIED. Plaintiff's Motion for Summary Judgment is likewise DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 17th day of September, 2013.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record