UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-24105-CIV-MORENO

ELIAS BAQUERO,

    Plaintiff,

vs.

LANCET INDEMINTY RISK RETENTION GROUP, INC.

    Defendant.
_____/

## ORDER DENYING CROSS-MOTIONS FOR RECONSIDERATION

This cause comes before the Court on the Parties' Cross-Motions for Reconsideration. On September 17, 2013, the Court denied both the Plaintiff's and the Defendant's Motions for Summary Judgment. On September 23, 2013, Plaintiff filed its Motion for Reconsideration; on September 24, the Defendant did the same. Neither party has demonstrated that their motions are consistent with the explicit purposes of motions for reconsideration. Thus, the Court hereby DENIES both Parties' Motions for Reconsideration.

I. Analysis

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Motions for reconsideration are appropriate where, for example, the Court has patently misunderstood a party, where there is an intervening change in controlling law or the facts of a case, or where there is manifest injustice. *See id.; Compagnoni v. United States*, 1997 WL 416482, at *2 (S.D. Fla. May 13, 1997).

"A motion for reconsideration should not be used as a vehicle to present authorities available

at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. at 1563. In their Motions for Reconsideration, both parties substantially repeat the arguments the Court rejected in its Order denying summary judgment. However, the parties now *italicize*, underline, or **embolden** the text of their argument. As the arguments, facts, and law remain the same, the Court's decision is not affected by these renewed pleas. Indeed, "[it is an improper use of] the motion to reconsider to ask the Court to rethink what the Court ... already thought through—rightly or wrongly." *Id.* (*quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983).

Nevertheless, one argument that merits addressing is Defendant's attempt to conflate RiteCare's corporate knowledge with Dr. Hossein Joukar's personal knowledge. Defendant is correct that corporations act through their agents and employees. *See Discover Prop. & Cas. Ins. Co. v. Lexington Ins. Co.* 664 F.Supp.2d 1296, 1301 (S.D. Fla. 2009). Knowledge of agents can be imputed to the corporation. *See id.* However, Defendant attempts to invert uncontroversial propositions to impermissible bounds. Defendant's arguments can be interpreted in two ways: (1) that the knowledge of one agent for a corporation can be imputed to another agent, or (2) that corporations have knowledge that can be imputed to individuals. Neither of these are correct in the context of this case.

The gist of the argument that Defendant repeats throughout its briefing documents is that, because the November 20 and December 15 letters were sent to *RiteCare* and received by *RiteCare*, *RiteCare* had knowledge of the potential claims when *RiteCare* filled out the Statement of No Known Claims, and thus, *RiteCare* made misrepresentations that removed this claim from coverage. The fundamental flaw of Defendant's logical roadmap is that RiteCare did not sign the Statement of No Known Claims, Dr. Joukar did. The facts as presented to the Court are that somebody at RiteCare signed for the letters, and that the letters were not addressed to Dr. Joukar, but were addressed to positions he held. However, Dr. Joukar has repeatedly testified that he did not see the letters.

Regarding the Statement of No Known Claims, the only person, individual or corporate, who could make a representation at all was Dr. Joukar. This conclusion is inevitable based on the language of the Statement. Indeed, the Statement is replete with language that can only be construed as pertaining to an individual. It begins "My signature below confirms that..." The signature is not of RiteCare, it is of Dr. Joukar. Indeed, RiteCare as a corporate entity is not mentioned on the document.

Further, each statement at issue begins with the "I." Statement 1 begins "I have no known losses or claims," and statements 2, 3, and 4 begin "I have no knowledge." Thus, this Court can draw no other conclusion other than the only knowledge being sought in that document was Dr. Joukar's knowledge. If Lancet had desired a warranty for facts outside of Dr. Joukar's subjective knowledge, it could have phrased them in such a way. Indeed, Lancet knew how do draft such a statement, as statement 5 reads "My signature below confirms that . . .[n]o prior professional liability carrier has REFUSED coverage for, or DECLINED to accept a report of a medical incident, threat of claim, letter of intent, and adverse result notice or attorney contract." Every other statement that Lancet required Dr. Joukar to affirm was couched in the explicit language of his personal knowledge. Thus, Lancet is incorrect in arguing that his personal knowledge is not relevant. While Lancet is correct that Dr. Joukar's actions bind RiteCare, it does not then follow that Dr. Joukar automatically knew on December 29 something that other people within RiteCare might have known.

The cases cited by Defendant do not require a different result. In *Coregis Ins. Co. v. McCollum*, the policy contained an exclusion where the policy did not apply to "any claim arising out of any act, error, omission or personal injury occurring prior to the effective date of this policy if any Insured at the effective date knew or could have reasonably foreseen that such act, error, omission or personal injury might be expected to be the basis of a claim or suit." *Coregis Ins. Co. v. McCollum*, 961 F.Supp. 1572, 1575 (M.D. Fla. 1997). In that case, the court entered summary judgment in favor of the plaintiff insurer who had given defendant a malpractice insurance policy

for defendant's law firm. *Id.* at 1574. Prior to the filing of a malpractice suit and prior to the effective date of the policy, an associate at the firm had written a memo for the file predicting the possibility of a malpractice suit. *Id.* at 1579. The partner at issue claimed he never saw the memorandum. *Id.* The Court held that "it is also irrelevant whether McCollum himself knew of a possible claim or even knew of Johnson's memorandum. The language of the exclusion contained within Plaintiff's policy explicitly states that coverage will be excluded if *any* insured under the policy knew or could have reasonably foreseen a possible claim." *Id.* In the case at bar, the language differs substantially from that in *McCollum*. By signing the Statement, but the statement's own express terms, Dr. Joukar only confirmed that he himself had "no knowledge or information relating to a MEDICAL INCIDENT which could reasonably result in claims" and "no knowledge of ANY REQUEST FOR MEDICAL RECORDS which might result in a claim."

Similarly, Defendant points to *Barnett v. Okeechobee Hosp.* for the principle that a properly mailed letter was received. In that case, a claimant filed a medical malpractice action against the Department of Veteran's Affairs ("VA"). *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1234 (11th Cir. 2002). The claimant sent a form to the VA as was required, and the VA provided affidavits from employees stating that they had not received it. *Id.* at 1235-36. The Court noted that "[a] court could not rely on the bare assertion of one member of the office that the mail was not received, since the mail might have been received by another." *Id.* at 1241. The 11th Circuit further noted that the "party's failure to uncover an item, which it was presumed to have received, does not mean that it never received the item and does not rebut the presumption of delivery." *Id.* Defendant uses this language to support its argument that *RiteCare* received the letters, and thus *RiteCare* had knowledge of the requests for medical records. Again, this is not the proper analysis. The Statement of No Known Claims asked solely for the signer's personal knowledge with respect to all statements except statement 5. Thus, it is not enough that there is a rebuttable presumption that RiteCare received the

letters, it must be shown that Dr. Joukar knew of the letters when he signed the Statement of No Known Claims.

Similarly, in *GRG Transp., Inc. v. Certain Underwriters at Lloyd's*, 896 So.2d 922 (Fla. Dist. Ct. App. 2005), the court upheld summary judgment where the insurance application asked "Has any insurer within the past 5 years refused to renew or cancelled insurance to applicant," and the insured answered "No" when it had actual knowledge of a previous cancellation. *GRG Transp.*, 896 So.2d 923. Again, that case is distinguishable from the case at bar, where the Statement of No Known Claims was explicitly limited by its own terms to Dr. Joukar's personal knowledge.

## II. Conclusion

THIS CAUSE came before the Court upon the Plaintiff's and Defendant's Motions for Reconsideration **(D.E. No. 75 and 76)**, filed on **September 23, 2013** and **September 24, 2013**, respectively.

THE COURT has considered the motions, responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motions are DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this /7 day of October, 2013.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record